UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-30126
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DERRICK LEMOND MILES, aka "Chuckie";
JEFFREY JEROME LIGHTEN; ANDREW T. CREECH,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Western District of Louisiana
(98-CR-30010)
_____

September 18, 2001

Before DAVIS and JONES, Circuit Judges, and BARBOUR[*], District
Judge.

PER CURIAM:[**]

Andrew Creech challenges his convictions and sentences for
conspiracy to commit murder-for-hire in violation of 18 U.S.C. §
1958 and possession with intent to distribute and conspiracy to
distribute controlled substances in violation of 21 U.S.C. §§
841(a)(1) and 846.  Derrick Miles and Jeffrey Lighten challenge the

_____

[*]District Judge of the Southern District of Mississippi,
sitting by designation.

[**]Pursuant to 5th Cir. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

sentences the court imposed following their convictions for possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1).  Finding no error, we affirm the district court in all respects.

I.

The only issue that merits any extended discussion in this case is Creech's challenge to the sufficiency of the evidence supporting his conviction for conspiracy to commit murder-for-hire. 18 U.S.C. § 1958 criminalizes murder-for-hire only when, "the defendant either (1) 'travels in or causes another (including the intended victim) to travel in interstate or foreign commerce,' or (2) 'uses or causes another (including the intended victim) to use the mail or any facility in interstate or foreign commerce.'" United States v. Marek, 238 F.3d 310, 312 (5th Cir. 2001) (en banc), petition for cert. filed, 69 U.S.L.W. 3673 (U.S. Apr. 4, 2001) (No. 00-1526).  Creech argues that the evidence produced by the government was insufficient to establish either of the jurisdictional elements of 18 U.S.C. § 1958.

A.

Creech ran a bail bond business in Monroe, Louisiana.  He wrote a bond for Samuel Nixon in the amount of $100,000, a portion of the fee for which was paid by Stephen Latha.  Nixon  later failed to appear and Creech became concerned that he would have to make good on his bond.  Though Creech had no idea how to find Nixon, he did know how to find Latha and thought that Latha would

lead him to Nixon.

Creech discussed his concerns about the Nixon bond with Jeffrey Peck, who was then incarcerated at the Ouachita Parish Jail. Peck often referred potential clients to Creech for his bail bond business, and the two spoke frequently by telephone. Because Peck was incarcerated, he could not receive phone calls, and thus every discussion between Peck and Creech was the product of a phone call initiated by Peck. Peck was also cooperating with the Federal Bureau of Investigation. On one of the calls between the two men, which was recorded by Peck and played at trial, Creech asked Peck about obtaining a hit man to find Latha and then torture him to reveal Nixon's whereabouts.

Peck told Creech that he would put Creech in touch with a man named Waco. Louisiana State Trooper Herbert Cross, posing as Waco, called Creech and arranged a meeting between the two men. Trooper Cross was posted in Alexandria, Louisiana and so never crossed a state line in traveling to his meeting with Creech in Monroe. Nor is there any evidence in the record that would show that Creech thought Cross was traveling from out of state to meet with him. At the meeting, a videotape of which was played at trial, Creech agreed to provide Cross with a weapon and to pay him $4,000 for finding Latha, torturing him for information about Nixon, and then killing him. Cross ended the meeting by informing Creech that he had to travel to Mississippi, but would return shortly to Louisiana to conclude their deal.

Cross in fact never traveled to Mississippi, but simply tried calling Creech a few days later to arrange another meeting. He did not reach Creech but did reach Robert Myers, Creech's co-conspirator. Cross arranged a meeting with Myers and Creech, a tape of which was played at trial. At the meeting, the two men told Cross that they would leave a pistol and some money in a motel room for him. At the meeting, the two men also asked Cross why he had no license plates on his car. Cross replied that he had removed the plates so he could not be identified, but that he would put plates on his car and drive home to Texas if the deal fell through. Myers obtained a room for Cross at a motel. A loaded pistol and $38 in cash were later recovered from the room.

B.

We will uphold a conviction if a rational jury could have found all the elements of the crime charged beyond a reasonable doubt. We review the sufficiency of the evidence in the light most favorable to the verdict, accepting all of the jury's decisions concerning the credibility of witnesses and the weight of the evidence. United States v. Ismoila, 100 F.3d 380, 387 (5th Cir. 1996).

Creech contends that the evidence produced by the government was insufficient to allow a rational jury to find beyond a reasonable doubt that, as part of his conspiracy with Robert Myers to commit murder-for-hire, he either (1) "travel[ed] in or cause[d] another (including the intended victim) to travel in interstate or

-4-

foreign commerce," or (2) "use[d] or cause[d] another (including the intended victim) to use the mail or any facility in interstate or foreign commerce."  18 U.S.C. § 1958.  Creech argues that no person involved in the murder-for-hire scheme, including Trooper Cross, ever traveled across state lines as part of the scheme. Creech also argues that he never used any facility in interstate commerce as part of the murder-for-hire scheme.

In Marek this court decided that even purely intrastate use of a facility in interstate commerce was sufficient to satisfy the second of § 1958's two jurisdictional elements.  Marek, 238 F.3d at 313.  In this case, the evidence produced by the government concerning Creech's use of the telephone - a facility in interstate commerce - was sufficient to satisfy the second of § 1958's two jurisdictional elements.  The evidence produced by the government showed that Creech discussed hiring a hit man and torturing Latha in a telephone call with Peck, that Creech set up a meeting with a man he thought was a hit man during a telephone call with Trooper Cross, and that Creech's co-conspirator Myers set up another meeting with Cross during a telephone call between the two men after Creech hired Cross to find and kill Latha.  This evidence is clearly sufficient to allow a rational jury to conclude beyond a reasonable doubt that Creech used a facility in interstate commerce as part of his conspiracy to commit murder-for-hire.  That both parties to each telephone call were in Louisiana is, following our decision in Marek, of no consequence.

Nor is it of any consequence, contrary to the argument made by Creech, that he never initiated any of the telephone calls discussed above. It is true that all the telephone calls discussed above - to which Creech was a party to the conviction - were initiated by the other party to the call. However, it is not the case that only the party that initiates a telephone call can be said to use the telephone. No matter who dials a telephone, both parties to the call use the telephone. United States v. Weathers, 169 F.3d 336, 338 (6th Cir. 1999), cert. denied, 528 U.S. 838, 120 S.Ct. 101, 145 L.Ed.2d 85 (1999).[1]

The evidence produced by the government in this case was clearly sufficient to allow the jury to conclude, beyond a reasonable doubt, that Creech used a facility in interstate commerce as part of his conspiracy to commit murder-for-hire. We thus need not consider whether the evidence would have been sufficient to allow the jury to conclude, beyond a reasonable doubt, that the travel jurisdictional element of § 1958 was proved at trial.

## II.

The remaining issues raised by the three defendants do not

---

[1]As we recognized, our holding in Marek conflicts with portions of the reasoning in Weathers. Marek, 238 F.3d at 319. Our holding in Marek does not conflict, however, with the implicit holding in Weathers that one who receives a telephone call uses the telephone for purposes of § 1958. Weathers and Marek only conflict on the issue of the importance of the location of the parties to a telephone call with respect to second of § 1958's two jurisdictional elements.

merit extended discussion. Creech's challenge to the sufficiency of the evidence supporting his conviction for conspiracy to distribute and possession with intent to distribute controlled substances amounts to nothing more than an attack on the credibility of the witnesses against him. Credibility determinations are left to the jury. Ismoila, 100 F.3d at 387. The district court did not abuse its discretion in not ordering a mistrial after Shane Creech's testimony because Shane Creech's testimony was not adverse to Andrew Creech and so Andrew's Sixth Amendment rights were never violated. United States v. Kindig, 854 F.2d 703, 709 (5th Cir. 1988). Finally, we uphold the sentences of all three defendants given that their sentences do not exceed the statutory maximums in light of the drug quantities charged in the indictments and found by the jury in its verdict. United States v. Doggett, 230 F.3d 160, 166 (5th Cir. 2000), cert. denied, 121 S.Ct. 1152, 148 L.Ed.2d 1014 (2001).

III.

For the reasons set forth above, the judgment of the district court is in all respects AFFIRMED.

AFFIRMED.